IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Terry Windell Keesley, Plaintiff, v. Detective Brewer, Defendant. | ) | C/A No. 8:24-cv-07493-DCC-WSB **REPORT AND RECOMMENDATION** |

This matter is before the Court on Defendant Detective Brewer's ("Defendant" or "Brewer") Motion for Summary Judgment. ECF No. 50. Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983 ("§ 1983"), alleging violations of his constitutional rights. ECF No. 24. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants and make findings and recommendations to the district court.

## BACKGROUND

Plaintiff commenced this action by filing a Complaint on December 20, 2024. ECF No. 1. Plaintiff filed a Second Amended Complaint (the "Amended Complaint") on March 10, 2025, which is the operative pleading in this matter. ECF No. 24. On December 28, 2025, Defendant filed a Motion for Summary Judgment (ECF No. 38), which the Court found moot based on construing Plaintiff's Response (ECF No. 41) as a request for discovery pursuant to Federal Rule of Civil Procedure Rule 56(d). *See* ECF Nos. 44-45.

On January 6, 2026, Defendant refiled the pending Motion for Summary Judgment after the completion of further discovery efforts. ECF No. 50. On April 29, 2026, Plaintiff filed a Response. ECF No. 67. On May 4, 2026, Defendant filed a Reply. ECF No. 68. This matter is fully briefed and ripe for review.

This matter arises from Plaintiff suffering a dog bite in connection with his arrest on December 5, 2024. ECF No. 24 at 5; 50-4, Brewer Aff. ¶ 1. Plaintiff alleges that he was attacked by a K-9 unit and that Defendant allowed the K-9 to continue to bite him when Plaintiff was not resisting and there were other police officers on the scene. ECF No. 24 at 5-6. Plaintiff alleges that he was transported by EMS to AnMed Hospital, where medical providers took photographs of his right arm, which had many dog bites. *Id.* at 6. Plaintiff alleges that the medical providers also x-rayed, cleaned up, and bandaged his arm. *Id.* As a result of the injuries, Plaintiff alleges that he has permanent scars, medical bills, medical damages, and emotional damages. *Id.* Plaintiff further alleges that that he is stressed, takes medicine for his anxiety, and that he now has a fear of dogs. *Id.*

Defendant presents three affidavits in support of his Motion for Summary Judgment. According to Defendant's affidavit, Defendant is an employee of the Anderson County Sheriff's Department ("ACSO") who is a Detective in the Narcotic's Division. ECF No. 50-4, Brewer Aff. ¶ 1. On December 5, 2024, Defendant received a text message from an officer from the Pendleton Police Department ("PPD"), who stated that PPD was working on a case involving Plaintiff. *Id.* Officer Murray conveyed certain information to Defendant regarding Plaintiff, including a description of Plaintiff, Plaintiff's name, and a description of a vehicle PPD believed that Plaintiff was driving. *Id.* Later that day, Defendant received a call that officers with the Clemson Police Department ("CPD") attempted to serve outstanding arrest warrants on Plaintiff, and that Plaintiff

fled in a vehicle.[1] *Id.* ¶ 2. The CPD officers told Defendant that they had terminated the vehicle pursuit, which Defendant assumed was due to safety concerns. *Id.* The CPD officers identified Plaintiff as the driver of the vehicle, gave a description of the vehicle, including a license tag number, and gave the direction in which Plaintiff's vehicle was travelling. *Id.* After receiving such information, Defendant proceeded toward the area where Plaintiff's vehicle was last seen travelling. *Id.* ¶ 3. As Defendant turned onto SC Highway 76, he saw a white van sitting in traffic which fit the description issued by the CPD. *Id.* Further, Defendant was able to see the driver and license tag number of the vehicle, both of which matched the description issued by CPD.[2] *Id.* Defendant reported, by radio, that he located the vehicle and was following from a safe distance. *Id.*

After Defendant followed Plaintiff's vehicle for a short time, Plaintiff pulled into an Enterprise Rental parking lot and began backing into a parking spot. ECF No. 50-4, Brewer Aff. ¶ 4. Defendant used the radio to convey Plaintiff's location to other officers. *Id.* Deputies Avery Sneed ("Deputy Sneed") and Jaden Morgan ("Deputy Morgan") (collectively "the Deputies") arrived on the scene as Plaintiff was backing into the parking spot. *Id.* ¶ 5. Deputy Morgan pulled into the parking lot immediately after Plaintiff finished backing into the parking spot and pulled in front of Plaintiff's vehicle, blocking and preventing Plaintiff from moving the vehicle. *Id.*; ECF No. 50-5, Morgan Aff. ¶¶ 3-4.

---

[1] Plaintiff asserts that the crime underlying the arrest warrants was credit card fraud. ECF Nos. 41 at 3; 67 at 2. Plaintiff further asserts that Defendant knew that the crime underlying the arrest warrants was credit card fraud. ECF Nos. 41 at 3; 67 at 2.

[2] Plaintiff asserts that he had dark tint on his vehicle's windows and thus Defendant could not have identified him as the driver of the vehicle. ECF No. 67 at 2.

Defendant waited until Plaintiff's vehicle was blocked before pulling into the parking lot. ECF No. 50-4, Brewer Aff. ¶ 6. Defendant avers that Plaintiff exited the vehicle and appeared to put something under the vehicle. ECF No. 50-4, Brewer Aff. ¶ 7. Deputy Morgan avers that Plaintiff began leaning into the vehicle and appeared to be reaching for something in the center console of the vehicle. ECF No. 50-5, Morgan Aff. ¶ 5. Deputy Morgan was the closest to Plaintiff and gave Plaintiff a loud verbal command to step away from the vehicle and show his hands. ECF Nos. 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶ 5. Plaintiff failed to comply with the commands but began slowly walking to the rear of the vehicle and then started fleeing on foot. ECF Nos. 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶ 5. Defendant and Deputy Mogan followed in pursuit, continuing to give loud verbal commands for Plaintiff to stop, show his hands, and that he was under arrest. ECF Nos. 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶ 5. Plaintiff was running with his hands in his jacket[3], which caused the pursuing officers to be concerned that Plaintiff had a weapon. ECF Nos. 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶ 7; 50-6, Sneed Aff. ¶ 7. Plaintiff ran behind the Enterprise Rental building and then went through some bushes and up a hill. ECF Nos. 41 at 2; 67 at 1; 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶ 6; 50-6, Sneed Aff. ¶ 7. The bushes were thick, which slowed down Plaintiff's pursuers. ECF Nos. 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶ 6; 50-6, Sneed Aff. ¶ 6. As Plaintiff asserts, Plaintiff "had a jump" on his pursuers. ECF No. 41 at 2.

After Plaintiff passed the bushes, there was an open field that Plaintiff began running across. ECF No. 50-4, Brewer Aff. ¶ 8. According to Defendant and the Deputies, Plaintiff still

[3] Plaintiff disputes that he was running with his hands in his pockets and asserts that he had a legal folder under his left arm and that his right hand was free. ECF No. 41 at 2. Plaintiff further asserts that because Defendant and the Deputies observed Plaintiff exit the vehicle, they should have seen that he did not have any weapons or drugs. *Id.* at 3.

had his hands in his jacket and they were still concerned that Plaintiff had a weapon. ECF Nos. 50-4, Brewer Aff. ¶ 8; 50-5, Morgan Aff. ¶ 7; 50-6, Sneed Aff. ¶ 7. Defendant and the Deputies were also concerned that there was no cover in the field in the case that Plaintiff did have a weapon. ECF Nos. 50-4, Brewer Aff. ¶ 8; 50-5, Morgan Aff. ¶ 7; 50-6, Sneed Aff. ¶ 7. Also, Plaintiff was running toward and apartment complex, which presented a potential risk to the public. ECF Nos. 50-4, Brewer Aff. ¶ 8; 50-5, Morgan Aff. ¶ 7; 50-6, Sneed Aff. ¶ 7. Further, it had appeared that Plaintiff had thrown items on the ground, so Defendant and the Deputies were concerned that Plaintiff could dispose of a weapon, drugs, or other dangerous items. ECF Nos. 50-4, Brewer Aff. ¶ 8; 50-5, Morgan Aff. ¶ 7; 50-6, Sneed Aff. ¶ 7.

Deputy Sneed, who was slightly behind Defendant and Deputy Morgan during the pursuit of Plaintiff, is a K-9 officer, and he had his K-9 unit on a leash while he was pursuing Plaintiff on foot along with Defendant and Deputy Morgan. ECF Nos. 50-4, Brewer Aff. ¶ 9; 50-5, Morgan Aff. ¶ 6; 50-6, Sneed Aff. ¶¶ 1, 5-6. While Defendant and the Deputies were pursuing Plaintiff across the field, they began yelling "dog" and stating several times "to stop or the dog will bite you."[4] ECF Nos. 50-4, Brewer Aff. ¶ 9; 50-5, Morgan Aff. ¶ 7; 50-6, Sneed Aff. ¶ 7. When Plaintiff failed to stop and continued running, Deputy Sneed dropped the K-9's leash and gave the K-9 a command to apprehend Plaintiff. ECF Nos. 50-4, Brewer Aff. ¶ 10; 50-5, Morgan Aff. ¶ 8; 50-6, Sneed Aff. ¶ 8. The K-9 quickly caught up to Plaintiff, grabbed Plaintiff's right arm, and took Plaintiff to the ground. ECF Nos. 50-4, Brewer Aff. ¶ 10; 50-5, Morgan Aff. ¶ 8; 50-6, Sneed Aff. ¶ 8. Plaintiff asserts that he had fallen down and lost one of his shoes, continued running, and

[4] Plaintiff asserts that he did not and could not have heard his pursuers yell "dog" or any other warnings regarding the threat of using the K-9 unit because he "had a jump on them." ECF Nos. 41 at 2; 67 at 1.

then fell again at which point the K-9 latched onto his right arm. ECF No. 41 at 2. Defendant and the Deputies ran to Plaintiff and worked to gain control of Plaintiff.[5] ECF Nos. 50-4, Brewer Aff. ¶ 10; 50-5, Morgan Aff. ¶ 8; 50-6, Sneed Aff. ¶ 8. Once Plaintiff was under control and secured, Deputy Sneed gave the command for the K-9 to release, and he released immediately. ECF Nos. 50-4, Brewer Aff. ¶ 10; 50-5, Morgan Aff. ¶ 8; 50-6, Sneed Aff. ¶ 8.

After Plaintiff was secured and the K-9 was ordered to release, Defendant and the Deputies sat Plaintiff up and assessed his injuries. ECF Nos. 50-4, Brewer Aff. ¶ 12; 50-5, Morgan Aff. ¶ 10; 50-6, Sneed Aff. ¶ 10. EMS had already been called and arrived at the scene within a short period of time. ECF Nos. 50-4, Brewer Aff. ¶ 12; 50-5, Morgan Aff. ¶ 10; 50-6, Sneed Aff. ¶ 10. PPD officers arrived and took custody of Plaintiff and followed EMS to AnMed Hospital. *Id.*

Plaintiff asserts that the hospital records contain photographs and treatment details that show how significant his wounds from the dog bite were. ECF No. 67 at 1. Plaintiff further asserts that he still has numbness in three of his fingers as a result if the dog bite. *Id.* In addition, Plaintiff asserts that he received over thirty days of wound care in the Anderson County Detention Center as a result of his injuries. ECF No. 41 at 4. Plaintiff further asserts that his mental health has suffered and he is now afraid of dogs. *Id.*

---

[5] Plaintiff alleges that Defendant allowed the K-9 to continue to bite him while he was not resisting and there were other officers on the scene. ECF No. 24 at 5-6. Plaintiff asserts that "Brewer seem[ed] to be taking his time to cuff my left arm while the dog was still [biting] me[.] I had to yell 'I'm not resisting' a few time[s] before they got the dog off of me." ECF No. 41 at 3. Plaintiff further asserts that Defendant and the Deputies "left the dog on me chewing my arm [through] a thick Carhart coat, longer [than] they should have, he had me cuffed and I had to beg for them to get the K-9 off me [be]cause I was not resisting." ECF No. 67 at 2. Plaintiff further asserts that Defendant and the Deputies tormented and laughed at him, stating, "oh what you think he couldn't bite you [through] your Carhart coat." *Id.*

## STANDARD OF REVIEW

**Liberal Construction of *Pro Se* Pleadings**

Because Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Court's duty to liberally construe a *pro se* litigant's complaint does not require the Court "to remove [it's] heavy robe . . . and take on the role of the litigant's attorney." *Jackson v. Dameron*, 171 F. 4th 641, 652 (4th Cir. 2026). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine"

if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Claims under § 1983**

The Amended Complaint is filed pursuant to § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim

under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

## ANALYSIS

The Amended Complaint asserts one cause of action for excessive use of force under the Fourth Amendment. ECF No. 24 at 4. For the reasons discussed below, Defendant is entitled to summary judgment on the claim.

### Excessive Force under § 1983

#### *Applicable Law*

Plaintiff alleges that Defendant used excessive force during the arrest. Plaintiff's excessive force claim is governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures ...." U.S. Const. amend. IV. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "This right is obviously greater when the suspect is resisting arrest and refusing to comply with the officer's orders." *Terrell v. City of Spartanburg,* C/A No. 7:17-cv-02738-BHH-JDA, 2018 WL 4782334, at *5 (D.S.C. Sept. 12, 2018). However, "[t]he Fourth Amendment bars police officers from using *excessive* force to effectuate a seizure." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (emphasis added). "Courts evaluate a claim of excessive force based on an 'objective reasonableness' standard." *Id.* (quoting *Graham*, 490 U.S. at 399). "Courts are to carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 884-85 (citations and internal quotation marks omitted). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tenn. v. Garner*, 471 U.S. 1, 8-9 (1985)). Therefore the three factors to analyze, established in *Graham v. Connor* are: (1) "the severity of the crime"; (2) "whether the suspect posed an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest." *Id.* The

United States Court of Appeals for the Fourth Circuit has held that, among these *Graham* factors, the second – whether the suspect poses an immediate threat to the safety of the officers or others – is "the most important." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024).

"[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397; *see Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) ("In questioning the split-second decisions of police officers, we must avoid hindsight bias and try to place ourselves in the heat of the moment."). Ultimately, "the question of whether the officer's actions were reasonable is a question of pure law." *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022); *see Scott v. Harris*, 550 U.S. 372, 381 n.8. (2007).

***Defendant's Direct Liability Under § 1983***

Defendant cannot be held directly liable for any excessive force claim arising from the use of the K-9 to effectuate Plaintiff's arrest because it is undisputed that Defendant was not the K-9's handler and did not exercise control over the K-9. *See Hinds v. Mohr*, 56 F. App'x 591, 593 (4th Cir. 2003) (granting summary judgment to police officers where a police canine was under the

control of its handler given that the plaintiff did "not contend that [they] possessed by virtue of their positions or their training any ability to restrain the dog while it was under [the handler's] command"); *McDaniel v. Jackson*, C/A No. 2:18-cv-1939-RMG, 2019 WL 6463788, at *3 (D.S.C. Dec. 2, 2019) (finding no basis to support excessive force claim for dog bite against defendant who was not the K-9 handler); *Lewallen v. McCarley*, C/A No. 8:21-cv-1171-SAL-MHC, 2022 WL 3161855, at *9 (D.S.C. July 7, 2022), *R&R adopted by* 2022 WL 3161684 (D.S.C. Aug. 8, 2022) (finding officer who did not give the command to the dog and was not the dog handler was not responsible for dog bite); *Edwards v. High Point Police Dept.*, 559 F.Supp.2d 653, 661 (M.D.N.C. 2008) (noting non-canine handler officer was entitled to summary judgment since he had no means to control the dog because he "was not a canine handler"); *Watterson v. Fowler*, C/A No. 9:06-cv-1064-PMD, 2006 WL 1663801, at *4 (D.S.C. June 8, 2006) (dismissing excessive force claim for dog bite as to South Carolina officers because they did not control the dog or order the dog to attack).

It is undisputed that Deputy Sneed was the relevant K-9 handler who deployed the K-9 by dropping the K-9's leash and who gave the command to apprehend Plaintiff. ECF No. 50-6, Sneed Aff. ¶¶ 5-6, 8. Plaintiff does not contend that Defendant was the K-9's handler, rather Plaintiff generally alleges that "Detective Brewer allowed the K-9 to continue to bite me when I was not resisting and there [were] other officers on the [scene]." ECF No. 24 at 5-6. Plaintiff further asserts that, "[w]hen they got to me, Brewer seem[ed] to be taking his time to cuff my left arm while the dog was still [biting] me] I had to yell I'm not resisting a few times before they got the dog off of me." ECF No. 41 at 3. Plaintiff also asserts that, "Brewer stated that he had nothing to do with the K-9, but he was the senior officer on the scene" because Defendant is a detective whereas Deputies Morgan and Sneed are deputies. ECF No. 67 at 1. Plaintiff continues by

asserting that, "[Brewer] was the one that the [choice], he is the senior officer of the scene so he had the say so." *Id.* Plaintiff's allegations and assertions are insufficient to create a factual issue as to whether Defendant was the K-9's handler or otherwise exercised a sufficient degree of control over the K-9 to an extent where Defendant could be found directly liable for the use of the K-9 to effectuate Plaintiff's arrest. Therefore, to the extent the excessive force claim is based on the theory that Defendant is directly liable for the use of the K-9 in effectuating Plaintiff's arrest, such claim is subject to summary judgment.

***Merits of Excessive Force Claim***

Plaintiff's excessive force claim arises solely from the use of the K-9 in effectuating his arrest. *See* ECF No. 24 at 5. Plaintiff alleges that he was attacked by the K-9 and that Defendant allowed the K-9 to continue to bite him while he was not resisting and there were other officers on the scene. *Id.* at 5-6.

***Severity of the crime***

Neither Plaintiff nor Defendants provide significant analysis or argument regarding the first *Graham* factor, severity of the crime. Plaintiff does not directly address or separately argue how the *Graham* factors apply in this case, but Plaintiff asserts that because the arrest warrants were issued based on a non-violent underlying crime, "credit card fraud," such crime was not sufficiently severe to warrant the use of a K-9 to effectuate the arrest. ECF Nos. 41 at 3; 67 at 2. Defendant and the Deputies aver that they were unaware of the underlying crime that gave rise to the warrants, but rather were aware that Plaintiff had fled from law enforcement in a vehicle. ECF Nos. 50-4, Brewer Aff. ¶¶ 1-3; 50-5, Morgan Aff. ¶¶ 1-2; 50-6, Sneed Aff. ¶¶ 1-2. It is undisputed that Plaintiff fled from law enforcement in a vehicle and that such was communicated to Defendant and the Deputies. ECF Nos. 50-4, Brewer Aff. ¶¶ 1-2; 50-5, Morgan Aff. ¶¶ 1; 50-6, Sneed Aff.

¶ 1. It is further undisputed that Defendant and the Deputies observed Plaintiff flee law enforcement on foot after the parties converged at the Enterprise Rental. ECF Nos. 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶ 5; 50-6, Sneed Aff. ¶ 5. It is also undisputed that Deputy Sneed released the K-9 and commanded the K-9 to apprehend Plaintiff while Plaintiff was running in the open field after ignoring Defendant and the Deputies' multiple commands to stop fleeing and warnings that the K-9 would bite Plaintiff. ECF Nos. 50-4, Brewer Aff. ¶¶ 7-10; 50-5, Morgan Aff. ¶¶ 5-8; 50-6, Sneed Aff. ¶¶ 5-8.

The analysis must focus "on the circumstances as they existed at the moment the force was used." *Knibbs*, 30 F.4th at 215. Before the use of force, Defendant and the Deputies were aware that Plaintiff had fled from law enforcement in a vehicle and that Plaintiff was then currently fleeing on foot. In addition, Plaintiff was fleeing despite multiple commands to stop and warnings that the K-9 would bite Plaintiff. As Plaintiff asserts, "I ran behind the building and through a line of bushes as [Defendant and the Deputies] stated, and *had a jump on them*…." ECF No. 41 at 2. Defendant and the Deputies aver that they were not aware of the crime underlying Plaintiff's arrest warrant. Thus, while the underlying crime giving rise to the arrest warrants may have been non-violent and therefore suggest a finding that this *Graham* factor weighs against the reasonableness of the use of a K-9 to effectuate Plaintiff's arrest, Plaintiff's fleeing law enforcement, twice, "make[s] the likelihood that the crime involved was more serious than that recounted by Plaintiff." *See, e.g.*, *Hendricks v. Greenville Cnty.*, C/A No. 6:24-cv-03587-JDA-WSB, 2026 WL 228887, at *6 (D.S.C. Jan. 9, 2026), *R&R adopted by* 2026 WL 228002 (D.S.C. Jan. 28, 2026). As the United States Court of Appeals for the Fourth Circuit has "recognized … [the] first *Graham* factor is intended as a proxy for determining whether 'an officer [had] any reason to believe that [the subject of a seizure] was a potentially dangerous individual.'" *Est. of Armstrong ex rel. Armstrong v. Vill.*

*of Pinehurst*, 810 F.3d 892, 900 (4th Cir. 2016) (quoting *Smith v. Ray*, 781 F.3d 95, 102 (4th Cir. 2015)). Based on Plaintiff fleeing law enforcement twice, ignoring commands and warnings, and the distance Plaintiff gained on his pursuers, a reasonable officer would have had reason to believe that Plaintiff was a potentially dangerous individual. Therefore, on balance, the first factor does not weigh significantly in favor of Plaintiff or Defendant and is therefore "not particularly germane" to the analysis. *Hendricks*, 2026 WL 228887, at *6 (quoting *Knibbs*, 30 F.4th at 215); *see also McDaniel*, 2019 WL 7900171, at *9 (finding that the first *Graham* factor, the severity of the crime, was "not clearly in either parties' favor" when a plaintiff's underlying crime was a traffic violation but the plaintiff "then attempted to evade the police and ultimately crashed into another vehicle."), *R&R adopted by* 2019 WL 6463788 (D.S.C. Dec. 2, 2019).

***Threat to safety***

The second *Graham* factor considers whether the suspect poses an immediate threat to the safety of the officers or others. Defendant contends that Plaintiff posed a potential threat to both the safety of Defendant and the Deputies and the public at large because: (1) Defendant was aware that Plaintiff had fled from law enforcement in a vehicle and was spotted on Highway 76 wherein a high volume of traffic existed; (2) Defendant and Deputies stated that they were concerned about potential danger to the public presented by Plaintiff potentially fleeing in his vehicle again; (3) once on foot, Plaintiff was running with his hands in his pockets, which raised concerns that he may have had a weapon; and (4) Plaintiff was running toward an apartment complex, which raised concerns that Plaintiff presented a danger to the public. ECF No. 50-1 at 10-11.

Plaintiff asserts, without any evidentiary support[6], that he did not have his hands in his pockets while he was fleeing on foot. ECF No. 41 at 2. Plaintiff argues that Defendant and the Deputies should have known that Plaintiff did not have any weapons or drugs because Defendant and the Deputies observed Plaintiff as he exited his vehicle once he parked at the Enterprise Rental. *Id.* at 3. Plaintiff also argues that the fact that he did not have any weapons on his person or in the vehicle suggests that he was not a threat. *Id.* at 2-3. Plaintiff asserts that he had a legal folder under his left arm and his right hand was also free. *Id.* at 2. Plaintiff further asserts that he fell and lost his shoe and got back up and ran and fell again and the K-9 was on his right arm. *Id.* at 2. Plaintiff argues that he was not able to hear his pursuers yell "dog" and that Defendant and the Deputies could not have seen whether he had his hands in his pockets because the bushes that he ran through obstructed any noise and because he was so far away from his pursuers. ECF Nos. 41 at 2; 67 at 1.

Deputy Morgan avers that once he blocked Plaintiff's vehicle into the parking spot, Plaintiff leaned into his vehicle and appeared to be reaching for something in the center console of the vehicle, which gave Deputy Morgan concern that Plaintiff had a weapon. ECF No. 50-5, Morgan Aff. ¶ 5. Defendant and Deputy Morgan's affidavits also consistently aver that it appeared that Plaintiff was throwing items on the ground while he was fleeing on foot. ECF No. 50-4,

[6] Plaintiff has not offered any competent evidence to create a factual dispute as to whether he had his hands in his pocket while he was fleeing on foot. On the other hand, Defendant and the Deputies' affidavits all consistently aver that Plaintiff was running with his hands in his jacket. ECF Nos. 50-4, Brewer Aff. ¶ 7; 50-5, Morgan Aff. ¶¶ 5, 7; 50-6, Sneed Aff. ¶ 7. "[B]are assertions without producing a scintilla of evidence [are] insufficient to create a genuine dispute of material fact." *Young v. Young*, C/A No. 5:23-cv-00088, 2024 WL 1599155, at *9 (S.D.W. Va. Jan. 16, 2024) (citation omitted), *R&R adopted by* 2024 WL 1008564 (S.D.W. Va. Mar. 8, 2024); *Traylor v. Carothers*, C/A No. 1:22-cv-00303, 2023 WL 4569587, at *7 (S.D.W. Va. June 13, 2023), *R&R adopted by* 2023 WL 4566057 (S.D.W. Va. July 17, 2023).

Brewer Aff. ¶¶ 7-8; 50-5, Morgan Aff. ¶ 7. Defendant and the Deputies' affidavits all consistently aver that they noted Plaintiff was running toward an apartment complex, that they were concerned about potential risk to the public, and that they were concerned for their own safety because there was no cover in the field that they were pursuing Plaintiff in. ECF Nos. 50-4, Brewer Aff. ¶ 8; 50-5, Morgan Aff. ¶ 7; 50-6, Sneed Aff. ¶ 7. In combination, the uncontroverted evidence suggests that Defendant and the Deputies reasonably believed that Plaintiff posed an immediate threat to their safety and the safety of the public based on: (1) Plaintiff previously evading law enforcement in his vehicle; (2) the events occurring in close proximity to Highway 76 and the apartment complex, thus presenting at least a tenuous potential threat to the public; (3) Plaintiff reaching into his center console and running with his hands in his pockets, thus presenting at least a possibility that Plaintiff was carrying a weapon; (4) there being no cover in the open field at the time that the K-9 was deployed. Furthermore, as discussed above, Plaintiff ignored multiple commands to stop fleeing and warnings regarding the K-9. *See supra* at 14. Based on such evidence, a Defendant and the Deputies could conclude that Plaintiff presented a threat to them and the public, and thus the second *Graham* factor weighs in favor of Defendant. *See*, *e.g.*, *Johnson v. Desoto Cnty., Mississippi*, C/A No. 3:23-cv-076-GHD-JMV, 2024 WL 3763593, at *4-6 (N.D. Miss. Aug. 12, 2024) (finding that each of the *Graham* factors weighed in favor of law enforcement when an arrestee had been involved in two vehicle evasions and one on foot evasion, refused to comply with law enforcement's demands at the initial stop, even if the arrestee had given up his evading on foot moments before the K-9 unit was released); *Tilson v. City of Elkhart, Ind.*, 317 F.Supp.2d 861, 867 (N.D. Ind. 2003) (granting summary judgment to law enforcement on excessive force claim when the arrestee refused law enforcement's orders and fled on foot toward a house and recognizing that the arrestee fleeing toward a house created a possible threat to residents), *aff'd*

*sub nom. Tilson v. City of Elkhart, Ind.*, 96 F. App'x 413 (7th Cir. 2004); *Edwards v. Shanley*, 666 F.3d 1289, 1295 (11th Cir. 2012) ("Here, the force necessarily caused by using a dog to track a fleeing suspect is reasonably tailored to the risk that a fleeing suspect presents. Furthermore, because the evidence shows that [the arrestee] had not yet tried to surrender when [law enforcement] allowed his dog to first bite [the arrestee's] leg, this is the sort of 'split-second' determination made by an officer on the scene that *Graham* counsels against second guessing.") (quoting *Graham*, 490 U.S. at 396-97); *Woodard v. Carol*, 630 F.Supp.3d 806, 817-18 (W.D. La. 2022) (finding that law enforcement being unable to see an arrestee's hands significant in holding that law enforcement's use of a K-9 to effectuate the arrest and allowing the K-9 to continue subduing the arrestee until he was handcuffed was objectively reasonable under *Graham*).

***Resisting or evading***

The third *Graham* factor, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, also weighs in favor of Defendant. It is undisputed that Plaintiff fled from law enforcement in his vehicle and that he again fled from law enforcement on foot once he parked at the Enterprise Rental. Further, Plaintiff admits that he ran behind the Enterprise Rental building and through the line of bushes as Defendant states. ECF No. 41 at 2. Plaintiff further admits that he "had a jump" on his pursuers. *Id.* Instead, Plaintiff argues that because he is a fifty-eight-year-old man, Defendant and the Deputies "could have chase[d] [him] down instead of letting the dog [loose] on [him]." ECF No. 41 at 2.

It is unclear how Plaintiff can argue that the use of the K-9 unit to effectuate his arrest was an unreasonable application of force when he admits that he fled from Defendant and the Deputies. "Plaintiff ignores the nature of the circumstances, including the police chase prompted by his own conduct." *Brandon Chrishon Polk v. Stanly Cnty.*, C/A No. 1:22-cv-613, 2024 WL 1287372, at

*9 (M.D.N.C. Feb. 23, 2024), *R&R adopted by* 2024 WL 1286241 (M.D.N.C. Mar. 26, 2024); *see Stephens v. Kern*, C/A No. 3:17-cv-00952, 2019 WL 611510, at *13 (S.D.W. Va. Jan. 17, 2019) ("Plaintiff completely disregards … that he was actively fleeing by vehicle and on foot in the events leading up to the deployment of the K-9 unit to effectuate the arrest."), *R&R adopted by* 2019 WL 609647 (S.D.W. Va. Feb. 13, 2019); *McDaniel*, 2019 WL 7900171, at *9 (finding that the third *Graham* factor weighed in favor of law enforcement despite an arrestee arguing that he was not actively resisting arrest at the time that he was bit by a K-9 unit because, "prior to the point K-9 … located Plaintiff, [law enforcement] had observed [the arrestee] flee the police by vehicle, crash into another vehicle, and then escape into the woods by foot. Under such circumstances, a reasonable officer could conclude that [the arrestee] was actively attempting to evade arrest by flight and that it was necessary to keep K-9 Magnum latched to [the arrestee] until he was in handcuffs.").

***Other evidence***

Additionally, although not specified in *Graham*, courts have found that "the extent of the plaintiff's injuries is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527-28 (4th Cir. 2003); *see also Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994); *Pressley v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987); *Lewallen*, 2022 WL 3161855, at *7. It is undisputed that after Plaintiff's arrest, he was transported to AnMed hospital by EMS. *See* ECF Nos. 24 at 6; 50-4, Brewer Aff. ¶ 12. Plaintiff alleges that while he was at the hospital, medical professionals took photographs of his right arm, which had many dog bites. ECF No. 24 at 6. Plaintiff further alleges that the medical providers also x-rayed, cleaned up, and bandaged his arm. *Id.* Plaintiff also alleges that as a result of the dog bites, he has permanent scars. *Id.* Plaintiff, without any

evidentiary support[7], asserts that medical records from Anderson County Detention Center show that he received care for his wounds for thirty days and that his mental health was affected by the use of the K-9. ECF No. 41 at 4. Also without any evidentiary support, Plaintiff asserts that AnMed hospital medical records, photographs of his arm, and the course of his treatment show how severe his wounds were. ECF No. 67 at 1. Based on the lack of evidence to corroborate Plaintiff's assertions regarding the extent of his injuries, Plaintiff has failed to demonstrate injury that suggests an excessive use of force. *Lassiter v. Reece*, C/A No. 3:07-cv-885-HFF-JRM, 2008 WL 2852164, at *5 (D.S.C. July 22, 2008) (characterizing a plaintiff's injury as de minimis where his dog bite wounds were cleaned, treated with antibiotic ointment and bandaged, and the plaintiff was provided with a tetanus shot and antibiotics) (citing *Foster v. Metropolitan Airports Comm'r*, 914 F.2d 1076, 1082 (8th Cir. 1990) (claims of nerve damage and pain, without medical records establishing long-term injury, insufficient to demonstrate excessive use of force)); *Cooper v. City of Virginia Beach*, 817 F.Supp.1310, 1319 (E.D. Va. 1993) ("[L]asting or serious injury" must be proven to escape summary judgment in excessive force case), *aff'd*, 21 F.3d 421 (4th Cir. 1994) (Table). Even accepting Plaintiff's unsupported assertions regarding the extent of his injuries as

---

[7] By Text Order dated December 2, 2025, the Court advised Defendant to treat Plaintif's Response to Defendant's First Motion for Summary Judgment as a document request under Federal Rule of Civil Procedure 34 seeking in part "medical records … relating to Plaintiff's 'over 30 days of wound care' and mental health attributable to the incident." ECF No. 44. Defendant represents that he complied with the Text Order by mailing the medical records to Plaintiff at the Anderson County Detention Center on December 8, 2025, which was the address of record provided by Plaintiff at that time. ECF No. 50-1 at 1 n.1. However, Defendant represents that the mail was returned as undeliverable, which is corroborated by the *Roseboro* Order being returned as undeliverable on January 20, 2026, as well as by Plaintiff filing two notices of change of address dated January 22, 2026, and March 16, 2026. ECF Nos. 53; 54; 59. Nevertheless, the Court has given Plaintiff ample time to engage in discovery and any failure to corroborate his assertions with evidence is squarely attributable to Plaintiff. Furthermore, other than the Response to the First Motion for Summary Judgment which the Court construed as a request for additional discovery pursuant to Rule 56(d), Plaintiff has not filed a discovery motion in this action.

true, such injuries are insufficient to overcome the weight of the *Graham* factors suggesting that the use of a K-9 was reasonable under the circumstances. *See Hupp v. Cook*, 931 F.3d 307, 322 (4th Cir. 2019) (recognizing that an arrestee's injuries are "but one 'consideration in determining whether force was excessive.'") (quoting *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018)).

Also relevant to excessive force claims involving the use of a K-9 is the length of time that the K-9 was engaged. Plaintiff alleges that Defendant "allowed the K-9 to continue to bite [him] when [he] was not resisting and there [were] other officers on the [scene]." ECF No. 24 at 6-7. Plaintiff further asserts that Defendant "seem[ed] to be taking his time to cuff [Plaintiff's] left arm while the dog was still biting me" and that Plaintiff had to yell "[I'm] not resisting a few time[s] before they got the dog off of [him]." *Id.* at 3.

Defendant avers that Deputy Sneed gave the command for the K-9 to release from Plaintiff once Plaintiff was "under control and secured." ECF No. 50-4, Brewer Aff. ¶ 10-11. This averment is consistent with the Deputies' affidavits. ECF Nos. 50-5, Sneed Aff. ¶ 10-11; Morgan Aff. ¶ 8-9. There is no evidence on the record suggesting the exact amount of time in which the K-9 was attached to Plaintiff.

Courts have consistently held that continued engagement of a K-9 until an arrestee is in handcuffs is reasonable and insufficient to state a claim for excessive force. *See*, *e.g*, *Hendricks*, 2026 WL 228887, at *7 (finding that dog bite duration lasting approximately forty seconds and release within five to six seconds after handcuffs being secured was reasonable and insufficient to state a claim for excessive force); *Lewallen*, 2022 WL 3161855, at *8 (D.S.C. July 7, 2022) (finding bite by police dog objectively reasonable which lasted under a minute and noting that "there were no allegations … or evidence before the Court that any force was used against [the

arrestee] after he was handcuffed, which 'supports the finding that the force used by the officers was that force which was necessary to affect the arrest of the aggressive individual in a rapidly changing environment.'") (quoting *Wilson v. Flynn*, 429 F.3d 465, 469 (4th Cir. 2005)); *Bullock v. Sinceno*, C/A No. 3:23-cv-5374-MGL-SVH, 2025 WL 2918014, *8-10 (D.S.C. March 7, 2025) (dog bite prolonged for roughly 30 seconds after handcuffs were secured did not violate a clearly established constitutional right). The record before the Court "supports the finding that the force used by the officers was that force which was necessary to affect the arrest of an aggressive individual in a rapidly changing environment." *Wilson*, 429 F.3d at 469.

Based on the weight of the *Graham* factors and the additional considerations above, the use of the K-9 to effectuate Plaintiff's arrest was not objectively unreasonable. *See*, *e.g.*, *Hendricks*, 2026 WL 228887, at *8 ("Under the totality of circumstances here, including [the arrestee's] repeated disregard for orders to cease resisting arrest, multiple warnings to [the arrestee's] prior to use of the K-9, and [the arrestee's] minor injuries, [law enforcement's] use of force in taking Plaintiff into custody was objectively reasonable."); *Johnson*, 2024 WL 3763593, at *6 (finding that "it was not objectively unreasonable for [law enforcement] to use a canine to subdue and assist in the apprehension of the [arrestee]," when the arrestee fled from law enforcement in a vehicle and again on foot, as well as ignored law enforcement's commands and warnings.); *McDaniel*, 2019 WL 7900171, at *9 (finding that "the totality of the circumstances demonstrate[ed] that [the arrestee's] allegations fail to establish that [law enforcement's] use of force violated his constitutional rights," when law enforcement observed the arrestee flee the police by vehicle, crash into another vehicle, and then escape into the woods by foot.) (internal quotation marks omitted); *Lewallen*, 2022 WL 3161855, at *8 ("Under the totality of circumstances here, including specifically [law enforcement's] order to cease resisting arrest,

warning [the arrestee] prior to the use of the canine, and [the arrestee's] minor injuries, [law enforcement's] use of force in taking Plaintiff into custody was objectively reasonable.); *Tilson*, 317 F.Supp.2d 861, 867 (granting summary judgment to law enforcement on excessive force claim when the arrestee refused law enforcement's orders and fled on foot toward a house and recognizing that the arrestee fleeing toward a house created a possible threat to residents).

***Qualified Immunity***

Defendant also contends that even if he violated Plaintiff's constitutional rights, he is entitled to qualified immunity. ECF No. 50-1 at 11-14. The Court agrees.

Qualified immunity shields government officials from liability unless "the official violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (quotations and brackets omitted). Thus, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 743. In this case, Plaintiff has not established a constitutional violation, nor has he established that a reasonable official would have understood that Defendant's actions violated a constitutional right. Defendant is therefore entitled to qualified immunity.

***Defendant's Supervisory Liability Under § 1983***

Plaintiff asserts that, "Brewer stated that … he was the senior officer on the scene" because Defendant is a detective whereas Deputies Morgan and Sneed are deputies, and thus "[Brewer] was the one that the [choice], he is the senior officer of the scene so he had the say so." ECF No.

67 at 1. The Court construes this as an effort to argue for supervisory liability against Defendant. Such argument is without merit.

Because the doctrine of respondeat superior does not apply to § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94, (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, *13 F.3d 791, 799* (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability as follows:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[ ]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).

Despite Plaintiff's cursory argument that because Defendant was the "senior officer" and thus the Deputies' supervisor by virtue of Defendant being a detective and Deputies Morgan and Sneed being deputies, there is no competent evidence showing that Defendant was the Deputies' supervisor. *See generally* ECF Nos. 50-4, Brewer Aff.; 50-5, Morgan Aff.; 50-6, Sneed Aff. In addition, Plaintiff has failed to allege facts[8] or produce evidence showing that Defendant had actual or constructive knowledge of his subordinates engaging in "pervasive or widespread conduct" that posed a risk of injury to arrestees like Plaintiff. *See Wilkins v. Montgomery*, 751 F.3d 214, 226

[8] Plaintiff does, in a single cursory assertion in one of his filings, assert that his case should not be dismissed because "[t]his is clearly a violation of my Four[th] Amendment [rights against] excessive force, and I believe I am not the only excessive force by K-9 case. ECF No. 41 at 4. However, Plaintiff does not provide any facts or evidence to support this assertion.

(4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799) ("Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread[,]" and plaintiffs must show that the offending conduct "has been used on several different occasions."). Further, as discussed herein, Plaintiff fails to establish that he suffered any constitutional injury. *See Doe v. Rosa*, C/A No. 2:14-cv-4396-RMG, 2016 WL 7496162, at *4 (D.S.C. Feb. 8, 2016) ("A supervisory liability claim is intimately linked to and derivative of the underlying constitutional violation of a subordinate employee. In the absence of unconstitutional conduct by a subordinate, there can be no supervisory liability claim."), *aff'd*, 664 F. App'x 301 (4th Cir. 2016). Accordingly, to the extent Plaintiff asserts the excessive force claim against Defendant under a theory of supervisory liability, such claim is subject to summary dismissal. *See Oneal v. Fenner*, C/A No. 6:24-cv-6284-DCC-WSB, 2024 WL 5514974, at *3-4 (D.S.C. Dec. 5, 2024), *R&R adopted by* 2025 WL 1080932 (D.S.C. Apr. 10, 2025).

***Defendant's Bystander Liability Under § 1983***

Plaintiff alleges that Defendant "allowed the K-9 to continue to bite me when I was not resisting and there [were] other officers on the [scene]." ECF No. 24 at 5-6. Plaintiff further asserts that, "[w]hen they got to me, Brewer seem[ed] to be taking his time to cuff my left arm while the dog was still [biting] me] I had to yell I'm not resisting a few times before they got the dog off of me." ECF No. 41 at 3. The Court construes Plaintiff's assertions as efforts to develop an argument for bystander liability against Defendant. However, such argument is without merit.

"To succeed on a theory of bystander liability, a plaintiff must demonstrate that a law-enforcement officer '(1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act.'" *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 417 (4th Cir. 2014) (quoting *Randall v. Prince George's*

*Cty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)); *see also Thomas v. Holly*, 533 F. App'x 208, 221 (4th Cir. 2013). The use of the K-9 was objectively reasonable and thus Plaintiff has not shown an underlying violation of his constitutional rights. *Sigman v. Town of Chapel Hill,* 161 F.3d 782, 788 (4th Cir. 1998) ("In the absence of an underlying use of excessive force, liability cannot be placed on other defendants.") (citing *Hinkle v. City of Clarksburg,* 81 F.2d 1380, 1390 (4th Cir. 1987)).

In addition, the second and third requirement for bystander liability involves the opportunity of Defendant to prevent harm and an affirmative choice not to intervene. In this matter, there is no evidence that Defendant had the ability to control the K-9 other than Plaintiff's cursory and unsupported argument that by virtue of Defendant being a detective, and Deputies Morgan and Sneed being deputies, Defendant was the highest-ranking officer on the scene. Additionally, at the time the K-9 was deployed, Defendant and the Deputies were actively involved in a pursuit to apprehend Plaintiff and get him secured in handcuffs. Even if a constitutional violation occurred, Defendant did not have a reasonable opportunity to stop the dog bite at issue. *See*, *e.g.*, *Hendricks*, 2026 WL 228887, at *9.

***Official Capacity Claims***

Plaintiff asserts the excessive force claim against Defendant in his official capacity. ECF No. 24 at 2. Plaintiff seeks money damages as relief for his excessive force claim. *Id.* at 6. However, it is undisputed that Defendant is an employee of the Anderson County Sheriff's Department. ECF No. 50-4, Brewer Aff. ¶ 1. Therefore, Defendant is entitled to Eleventh Amendment immunity to the extent he is sued in his official capacity for money damages. *See*, *e.g.*, *Best v. Richardson*, C/A No. 2:25-cv-13514-RMG-MGB, 2026 WL 662398, at *4 (D.S.C. Jan. 29, 2026) ("[A]s employees of the Dorchester County Sheriff's Office, the individual

Defendants are state agents, and they enjoy Eleventh Amendment immunity when sued for damages in their official capacities in federal court.") (citation omitted), *R&R adopted by* 2026 WL 660587 (D.S.C. Mar. 9, 2026); *Childress v. City of N. Charleston*, C/A No. 2:21-cv-02843-DCN-MGB, 2021 WL 9553006, at *4 (D.S.C. Dec. 6, 2021) ("The Fourth Circuit and courts within this district have long held that sheriffs in South Carolina are state officials for purposes of Eleventh Amendment immunity."), *R&R adopted by* 2022 WL 4376865 (D.S.C. Sept. 22, 2022). A sheriff's deputies are also entitled to Eleventh Amendment immunity. *Allen v. Fidelity & Deposit Co. of Maryland*, 515 F.Supp.1185, 1190 (D.S.C. 1981), *aff'd*, 694 F.2d 716 (4th Cir. 1982) ("[A] deputy sheriff has been considered, both under South Carolina common and statutory law, as the agent of the sheriff, not as [an] 'employee' of the county."); *Millmine v. County of Lexington (S.C.)*, C/A No. 3:09-cv-1644-CMC, 2011 WL 182875, at *5 (D.S.C. Jan. 20, 2011) ("In South Carolina, a sheriff's department is an agency of the state, not a department under the control of the county."). "[I]t is well established in South Carolina case law that law enforcement at the county level is the exclusive province of the sheriff." *Patel by Patel v. McIntrye*, 667 F.Supp. 1131, 1146 (D.S.C. 1987) (citing *Allen*, 515 F.Supp. at 1189–90), *aff'd sub nom.*, *Patel by Patel v. Dyar*, 848 F.2d 185 (4th Cir. 1988); *McCall v. Williams*, 52 F.Supp. 2d 611, 615 (D.S.C. 1999) ("As an arm of the State, a deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal court, unless the state expressly waived this immunity.").

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned recommends that the district court **GRANT** Defendant's Motion for Summary Judgment (ECF No. 50), thereby **DISMISSING** this action in its entirety.

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

July 17, 2026
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).